## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIVIDAD CONCEPCION, XUE SHI LIN, and JESSE FRIEDMAN, on behalf of themselves and all others similarly situated, | Civil Action No. |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| ALTICE USA, INC.; CSC HOLDINGS, LLC (D/B/A OPTIMUM); and DOES 1 THROUGH 10, INCLUSIVE, | |
| Defendants. | |

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ........................................................................... - 1 -

THE PARTIES ............................................................................................................... - 3 -

JURISDICTION AND VENUE .................................................................................... - 5 -

FACTUAL ALLEGATIONS OF DEFENDANTS' DECEPTIVE FEE SCHEME ................ - 6 -

     A.    Defendants' Website Advertising and Online Purchase Process
         Made False and Misleading Statements About the Prices
         Defendants Charged for Optimum Internet Service Plans. .............................. - 9 -

     B.    Defendants' Sales Agents Made False and Misleading Statements
         About the Prices Defendants Charged for Optimum Internet
         Service Plans. ............................................................................................... - 12 -

     C.    Defendants Continued To Deceive Optimum Internet Customers
         After They Signed Up. ................................................................................... - 14 -

     D.    Defendants Intentionally Make It Difficult for Optimum Internet
         Customers to Cancel Service. ....................................................................... - 16 -

PLAINTIFFS' FACTUAL ALLEGATIONS .............................................................. - 18 -

CLASS ALLEGATIONS.............................................................................................. - 21 -

CAUSES OF ACTION .................................................................................................. - 25 -

    COUNT I: Violations of New York General Business Law § 349. ........................... - 25 -

    COUNT II: Violations of New York General Business Law § 350............................. - 28 -

    COUNT III: Breach of Contract Through Violation of the Implied Covenant
    of Good Faith and Fair Dealing...................................................................................... - 31 -

PRAYER FOR RELIEF ................................................................................................ - 33 -

DEMAND FOR JURY TRIAL..................................................................................... - 34 -

Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows, on personal knowledge and investigation of counsel, against Defendant Altice USA, Inc., Defendant CSC Holdings, LLC (d/b/a Optimum), and Defendants Does 1 through 10, inclusive (collectively "Altice," "Optimum" or "Defendants"):

## INTRODUCTION AND SUMMARY

1.      Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman, on behalf of themselves and all others similarly situated, bring this action under New York law to challenge a deceptive fees scheme whereby Defendants charged their customers more for Optimum internet service than Defendants advertised and promised.  Specifically, Defendants advertised and promised to sell Optimum internet service to consumers at flat monthly rates for a specified time period, and Defendants' customers agreed to pay those rates for Optimum internet service. However, Defendants actually charged their customers higher monthly rates by unilaterally and deceptively adding to each customer's monthly bill a fabricated, undisclosed, and extra-contractual additional charge, which Defendants called a "Network Enhancement Fee." Defendants used this Network Enhancement Fee (the "Fee") as a way to covertly increase their customers' monthly rates for Defendants' own profit, including during their customers' advertised and promised fixed-rate service periods.

2.      Defendants began padding their Optimum internet service bills with the so-called Network Enhancement Fee in February 2019, at a rate of $2.50 per month for each Optimum internet customer.  Defendants thereafter increased the Fee to $3.50 per month, which amount they currently charge each and every Optimum internet customer on a monthly basis over and above the advertised and agreed-to monthly rates for such service.

3.      The Network Enhancement Fee was not included in the advertised and quoted Optimum internet service plan prices to which Defendants' customers – *i.e.,* Plaintiffs and Class members – agreed when they purchased Optimum internet service from Defendants. Indeed, it is specifically alleged that neither Plaintiffs nor the Class members ever agreed or consented to the Fee or to any increases thereto.

4.      Nor did Defendants disclose the Network Enhancement Fee to Optimum internet customers before or when said customers agreed to purchase Optimum internet service from Defendants.

5.      Rather, the first time Defendants ever mentioned the Network Enhancement Fee to their customers was on their customers' monthly billing statements, which customers began receiving only after they signed up for internet service and were committed to their purchase. Even then, Defendants deliberately buried the Fee, without any definition or explanation whatsoever, in middle of their billing statements.  Thus, by Defendants' very design, Defendants' monthly statements served to further Defendants' scheme and keep Defendants' customers from realizing they were being overcharged.

6.      In the event that a customer happened to notice that the Network Enhancement Fee had been charged on his or her monthly statement and contacted Defendants to inquire about the Fee, Defendants' agents would falsely tell the customer that the Fee was a tax or government fee or was otherwise out of Defendants' control.

7.      In actuality, the Network Enhancement Fee was not a tax or government fee. Rather, the so-called Fee was and is a completely fabricated and arbitrary double-charge invented by Defendants as a way to covertly charge more per month for Defendants' Optimum internet service without having to advertise higher prices.

8.      Defendants charged every one of their New York and Connecticut internet service customers the undisclosed, extra-contractual Network Enhancement Fee, including Plaintiffs and each member of the proposed Class.  Indeed, Plaintiffs estimate that Defendants have pilfered more than $150 million in Network Enhancement Fees from unsuspecting New York and Connecticut Optimum internet customers since they unilaterally began imposing the Fee in February 2019.

9.      Plaintiffs bring this lawsuit individually and on behalf of a proposed class of all Optimum internet customers in New York and Connecticut, seeking restitution and/or damages on behalf of themselves and a class of New York and Connecticut Optimum internet subscribers to obtain a refund of all the undisclosed, extra-contractual Network Enhancement Fees they paid to Defendants as a result of Defendants' misconduct.

## THE PARTIES

10.      Plaintiff Natividad Concepcion is a citizen and resident of Brooklyn, Kings County, New York, and was a customer of Defendants' Optimum internet service during the class period.  Like every other class member, Plaintiff Natividad Concepcion has been victimized by the same uniform policies described in detail herein, in that she signed up for Defendants' Optimum internet service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received an Optimum bill which imposed the same undisclosed Network Enhancement Fee in the same uniform language as described herein, and paid the Network Enhancement Fee complained of herein.

11.      Plaintiff Xue Shi Lin is a citizen and resident of Brooklyn, Kings County, New York, and was a customer of Defendants' Optimum internet service during the class period. Like every other class member, Plaintiff Xue Shi Lin has been victimized by the same uniform

policies described in detail herein, in that she signed up for Defendants' Optimum internet service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received an Optimum bill which imposed the same undisclosed Network Enhancement Fee in the same uniform language as described herein, and paid the Network Enhancement Fee complained of herein.

12.     Plaintiff Jesse Friedman is a citizen and resident of Bridgeport, Fairfield County, Connecticut, and was a customer of Defendants' Optimum internet service during the class period.  Like every other class member, Plaintiff Jesse Friedman has been victimized by the same uniform policies described in detail herein, in that he signed up for Defendants' Optimum internet service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received an Optimum bill which imposed the same undisclosed Network Enhancement Fee in the same uniform language as described herein, and paid the Network Enhancement Fee complained of herein.  Plaintiff Jesse Friedman seeks relief from Defendants under New York law pursuant to Defendants' Residential General Terms and Conditions of Service, Paragraph 25, which purports to govern the relationship between Defendants and their customers and provides that "this Agreement shall be governed by the laws of the state of New York."[1]

13.     Defendant Altice USA, Inc., is a corporation chartered under the laws of Delaware, with its principal place of business in Long Island City, Queens County, New York.

14.     Defendant CSC Holdings, LLC is a limited liability company chartered under the laws of Delaware, with its principal place of business in Long Island City, Queens County, New York.

---

[1] *See* https://www.optimum.com/terms-of-service/residential.

15.     Without formal discovery, Plaintiffs are unable to determine exactly which other entities, if any, engaged in or assisted with the unlawful conduct pled herein or which instructed, approved, consented, or participated in the unlawful conduct pled herein. "Optimum" is the business entity that is referenced in Plaintiffs' billing statements, yet "Optimum" does not appear to be an actual business entity.  Meanwhile, CSC Holdings, LLC and "Altice" are referenced in the Optimum General Terms and Conditions of Service (Residential), and CSC Holdings, LLC is listed as holding the copyright on the Optimum website at www.optimum.com.  Based on counsel's research, Defendant Altice USA, Inc., is the parent and holding company that provides, through its subsidiaries which include CSC Holdings, LLC, broadband internet, communication, and video services under the brand "Optimum."  Defendant Altice USA, Inc.'s most recent 10-K report lists several dozen subsidiaries, none of which is named "Optimum."  The relevant operating company in New York appears to be Defendant CSC Holdings, LLC, which is a subsidiary of Altice USA, Inc.

16.     Defendants Does 1 through 10 are business entities of unknown form which engaged in or assisted with the unlawful conduct pled herein or which instructed, approved, consented, or participated in the unlawful conduct pled herein. Plaintiffs are presently ignorant of the names of these Doe Defendants.  Plaintiffs will amend this Complaint to allege the true names and capacities of these defendants when they have been determined.

## JURISDICTION AND VENUE

17.     **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332.  There is minimal diversity between Plaintiffs and the Class and Defendants, and the total amount in controversy exceeds the sum of $5,000,000.00.

18.     **Personal Jurisdiction**. This Court has personal jurisdiction over all Defendants because: (1) each Defendant is headquartered in New York and in this District; (2) each Defendant is authorized to do business and regularly conducts business in New York, including in this District; (3) the claims alleged herein took place in New York, including in this District, in that Plaintiffs and Class members purchased and received Optimum internet service from Defendants in New York and were billed from Defendants' headquarters in New York; and/or (4) Defendants have committed tortious acts within New York and this District (as alleged, without limitation, throughout this Complaint).

19.     **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Plaintiffs Natividad Concepcion and Xue Shi Lin are each New York citizens who reside in Brooklyn, Kings County, New York, which is in this District, and the services at issue were purchased for, and provided to, Plaintiffs' homes in Brooklyn, Kings County, New York.

## FACTUAL ALLEGATIONS OF DEFENDANTS' DECEPTIVE FEE SCHEME

20.     Defendant Altice USA, Inc. is the fourth-largest cable television provider in the United States, supplying internet, television, and telephone services to approximately 4.9 million residential and business customers in 21 states.  Its regional subsidiary CSC Holdings, LLC, which does business as and operates under the "Optimum" brand name, services businesses and households primarily in New York, New Jersey, and Connecticut, and offers services to over 2 million people across those three states.  Virtually all Optimum customers subscribe to internet service, and many also subscribe to television and/or telephone services as part of a "bundled" internet service plan. (The term "internet service plan" as used in this Complaint includes a service plan that "bundles" internet with other services such as television or telephone.)

21.     Defendants advertise all of their Optimum internet service plans at specific, flat monthly prices that are advertised to be "locked-in" for a certain promotional period. Defendants typically promise their customers a one-year fixed-price promotional period, but Defendants also regularly advertise a "Price For Life" promotion where they offer and promise their customers a fixed price for an internet service plan for life.

22.     Defendants have aggressively advertised their Optimum internet service plans through pervasive marketing directed at the consuming public in New York and Connecticut. This marketing has included advertisements on the Optimum website; other internet advertising; materials and advertising at Defendants' Optimum retail stores in New York and Connecticut where customers can sign up for Optimum services; television advertising; and video advertisements via YouTube, Facebook, and Twitter.

23.     Prior to February 2019, Defendants included in the advertised and quoted monthly Optimum internet service plan prices all monthly internet service costs that would be charged on their customers' monthly bills.

24.     But beginning in February 2019, Defendants unilaterally began padding customers' Optimum bills with a newly-invented and disguised $2.50 extra charge each month for Optimum internet service – which charge was *not* included in the advertised and quoted service plan price, and which Defendants' customers did *not* agree to pay – which Defendants called the "Network Enhancement Fee."  Defendants buried the Network Enhancement Fee in the middle of their monthly bills, and provided no definition or explanation of the Fee in their monthly bills or on their Optimum website.

25.     In or around February 2020, Defendants increased the Network Enhancement Fee charged to their Optimum internet customers by $1.00, to $3.50 per customer per month.

26.     Defendants' Network Enhancement Fee was not a tax or government fee, nor was it a legitimate "pass-through" charge.  Nor did Defendants' customers receive anything different or more than they were promised in exchange for paying the Fee to Defendants. Rather, the Network Enhancement Fee was a completely fabricated and arbitrary charge invented by Defendants as a way to covertly charge their customers more per month for internet service than the amounts Defendants had promised, and to which their customers had agreed.

27.     Moreover, Defendants never adequately disclosed the existence, amount, or nature of the Network Enhancement Fee to their customers, nor any increases thereto.  Nor did Defendants ever seek consent or agreement from their customers to charge the Fee, and in fact no Plaintiff or Class member ever consented or agreed to pay the Fee (or any increases thereto). Rather, the Network Enhancement Fee was arbitrarily and unilaterally imposed by Defendants, and increased, without adequate disclosure, solely to increase Defendants' own profit.

28.     Defendants have utilized this fabricated and arbitrary Network Enhancement Fee as part of a bogus fee scheme whereby Defendants (a) advertised and promised a lower monthly price for their Optimum internet service plans than Defendants actually charged, and then (b) surreptitiously increased the monthly service rate for Optimum internet customers, including in the middle of promised, fixed-rate promotional periods, by imposing (and increasing) the Network Enhancement Fee.

29.     Based on Plaintiffs' calculations, through this bait-and-switch scheme Defendants have extracted in excess of $150 million in Network Enhancement Fee payments from their Optimum internet subscribers in New York and Connecticut.

A.  **Defendants' Website Advertising and Online Purchase Process Made False and Misleading Statements About the Prices Defendants Charged for Optimum and Suddenlink Internet Service Plans.**

30.  Defendants explicitly represented in their website advertising and representations to consumers like Plaintiffs and the Class that the advertised prices for their Optimum internet service plans included all monthly service charges, and that the promised monthly rates would be fixed during the specified promotional period.

31.  For example, Defendants' online order process consists of four webpages: (1) the "Select Your Services" webpage; (2) the "Customize Your Services" webpage; (3) the "Customer Information" webpage; and (4) the "Schedule Installation" and "Place Order" webpage.

32.  On the "Select Your Services" webpage, Defendants advertised, *inter alia*, the Optimum 100 internet service plan at a flat rate of $29.99 a month.  Upon selecting this service plan, customers would see, in large, bold font on the right side of the webpage, that their "Monthly Total" price for the Optimum 100 internet service plan was "$29.99."

33.  Below the $29.99 "Monthly Total" representation, however, was smaller text reading: "Additional taxes, fees, surcharges, and restrictions apply."  But there was no explanation specifying what additional taxes, fees, or surcharges might apply.  A reasonable consumer would assume that any "additional taxes, fees, [or] surcharges" would be legitimate government or pass-through charges outside of Defendants' control, as opposed to a fabricated and arbitrary fee which was a disguised double-charge to provide the same internet service that Defendants advertised as included in the $29.99 monthly price.

34.  Upon selecting the $29.99 Optimum 100 internet service plan, the consumer would then be taken to the "Customize Your Services" webpage, where the consumer could customize the service and select add-ons.

35.     As on the "Select Your Services" webpage, the right side of the "Customize" webpage prominently stated in large, bold font that the "Monthly Charges" were $29.99. Directly below that, Defendants listed a breakdown showing that the monthly price for the "Optimum 100" plan was $34.99 less a $5.00 discount for enrolling in "Auto Pay" and "Paperless Billing."  Again, in smaller text below the $29.99 "Monthly Charges" representation Defendants stated that "Additional taxes, fees, surcharges, and restrictions apply," but there was no explanation specifying what additional taxes, fees, or surcharges might apply.

36.     Importantly, there was no disclosure language, asterisk, or link adjacent to or in the vicinity of the promised monthly price indicating that Defendants would charge an additional monthly internet service Fee of $3.50, such that the true "Monthly Charges" for the Optimum 100 internet service plan was actually $33.49, not $29.99 – representing an 11.7% increase in the total monthly cost to Defendants' customers of the Optimum 100 plan.

37.     Further, there was no disclosure language indicating that the internet service plan price could be raised at any time during the purported fixed-rate period; only the statement in small print that "Additional taxes, fees, surcharges and restrictions apply."  Again, a reasonable consumer would assume that "taxes, fees, surcharges" referred to legitimate government or pass-through charges outside of Defendants' control, as opposed to a bogus fee unilaterally imposed by Defendants which was in fact a disguised double-charge for the same internet service above and beyond the promised and agreed-to service price.

38.     Next, the customer would be taken to the "Customer Information" webpage. Again, the right side of the webpage continued to state that the total "Monthly Charges" for the Optimum 100 internet service plan were $29.99, with no mention of an additional monthly $3.50 Network Enhancement Fee.

39.     The final page in the online order process was the "Schedule Installation" and order submission webpage.  On this webpage, which contained a "Place Order" button, Defendants again stated that the "Monthly Charges" for the Optimum 100 internet service plan totaled $29.99, with no mention or disclosure of any additional monthly $3.50 Fee.

40.     On none of these order process webpages was there any mention of the additional Network Enhancement Fee or its amount.

41.     In fact, the advertised price for the Optimum 100 internet service plan was false, because it did not include the additional $3.50 for the so-called Network Enhancement Fee which Defendants automatically charged to all Optimum internet customers, and which was in fact a fabricated and disguised double-charge for the promised internet service.

42.     Any disclosures which Defendants made about the Network Enhancement Fee were themselves part and parcel of Defendants' deceptive practices, whereby Defendants advertised and quoted the lower-than-actual internet service price and then deceptively presented the Network Enhancement Fee as something separate even though it was in fact a bogus fee for the same internet service quoted in the advertised and promised internet service plan price.

43.     For example, the only way the existence of the Network Enhancement Fee could be found in the online purchase process was if the consumer scrolled to the bottom right of the purchase process webpages and noticed and clicked on a tiny "Disclaimer" hyperlink.

44.     If the consumer clicked this small "Disclaimer" hyperlink, a pop-up box would appear with pages of fine print for various Optimum service plans.  Buried deep in this fine print was the sentence: "EQUIP, TAXES & FEES: Free standard installation with online orders. visit Optimum.com/installation for details. . . . A $3.50 Network Enhancement Fee applies. Surcharges, taxes, plus certain add'l charges and fees will be added to bill, and are

subject to change during and after promotion period." Nowhere in this tiny print (which only displayed after clicking a small "Disclaimer" hyperlink at the bottom of the page) did Defendants define or explain what the Network Enhancement Fee was.[2]

45.     Even if a consumer saw this hidden disclaimer, the disclaimer simply reinforced and furthered Defendants' deception that the (undefined) Network Enhancement Fee was to pay for something separate from the internet service itself, even though the Fee was in fact an invented double-charge for the same internet service quoted in the internet service plan price. Even worse, the disclaimer was additionally misleading because, by listing the Network Enhancement Fee in the fine print under "TAXES & FEES," Defendants falsely and intentionally indicated to consumers that the Network Enhancement Fee was a legitimate government tax or fee outside of Defendants' control.

46.     Meanwhile, Defendants' form terms of service (the "Residential General Terms and Conditions of Service"[3]) posted on the Optimum website did not name or disclose the existence of the Network Enhancement Fee, despite listing and naming numerous other specific charges and fees that customers must pay.

**B.    Defendants' Sales Agents Made False and Misleading Statements About the Prices Defendants Charged for Optimum Internet Service Plans.**

47.     Defendants also engaged in this bait-and-switch scheme with consumers who signed up for Optimum internet service plans over the phone, via internet chat, or at one of Defendants' brick-and-mortar Optimum stores.  When a consumer signed up for internet

---

[2] As of at least December 21, 2020, a definition of the Network Enhancement Fee could not be found anywhere on the entire Optimum website.  Even if a customer clicked on a tiny link in the footer of the homepage for "Online help," and then did a search for "Network Enhancement Fee" in the search bar, zero results were displayed.  Likewise, on the sample internet service bill which was posted in the "Online help" section of the Optimum website as of December 21, 2020, the Network Enhancement Fee was listed nowhere.

[3] Available at https://www.optimum.com/terms-of-service/residential, last accessed July 22, 2022.

service through an Optimum sales agent, the agent would present the consumer with the same menu of internet service plans and prices that were on Optimum's sales website. The offers were exactly the same, including the advertised monthly rates which excluded the Network Enhancement Fee.

48.     Defendants' uniform policy and practice was for Optimum sales agents (including telesales agents and in-store sales staff) to: (1) not disclose or mention the existence of the Network Enhancement Fee; and (2) quote prices for Optimum internet service plans which *excluded* the amount of the Network Enhancement Fee.

49.     When Optimum agents quoted customers the total order price (which price excluded the amount of the Network Enhancement Fee), the most they said, if anything, about any additional charge is that the quoted price was the total "plus taxes" or "plus taxes and fees." A reasonable consumer would interpret the phrase "taxes and fees" to mean government or regulatory charges, as opposed to an invented and arbitrary double-charge unilaterally imposed and collected by Defendants to provide the same internet service that was quoted and promised in the advertised service plan price.

50.     Discovery will show that Defendants had a uniform, standard policy of directing Optimum sales agents to not mention or disclose the existence of the Network Enhancement Fee or its amount, and to at most mention (if at all) that the advertised, offered, and promised price was the total monthly service price plus "taxes" or "taxes and fees."

51.     Optimum sales agents were likewise trained to push promotional offers by promising customers that the advertised service rates were guaranteed not to increase during the promotional period. Defendants regularly advertised 12-month fixed-price promotions, as well as "Price For Life" promotions, where Defendants promised that the monthly service plan rate would not increase during the life of the customer's service with Optimum. These

representations of fixed internet service rates were false because Defendant in fact reserved the right to, and did in fact, increase their service prices during the promotional period by imposing and/or increasing the Network Enhancement Fee.

**C.    Defendants Continued To Deceive Optimum Internet Customers After They Signed Up.**

52.    Defendants continued to deceive Optimum customers about the Network Enhancement Fee and the true monthly price of Optimum internet service even after they signed up and were paying for such service.

53.    Defendants first began sneaking the Network Enhancement Fee onto all of their customers' bills in February 2019, at a rate of $2.50 per month. For customers who signed up prior to February 2019, the first time they could have possibly learned about the existence of the Fee was on their bill after the Fee was introduced. This could have been months or years after the customer had signed up for Optimum internet service, and it could have also been while the customer was still under a promised fixed-price promotion (including a "Price For Life" promotion).

54.    For customers who signed up after Defendants began imposing the Network Enhancement Fee, the billing statements were the first possible chance they could have learned about the Fee, and by the time they received their first statement they were already committed to their purchase.

55.    Moreover, far from constituting even a belated disclosure, the monthly billing statements served to further Defendants' scheme and deception.

56.    First, Defendants buried the Network Enhancement Fee in the middle of the multi-page bill, where customers were unlikely to even notice it.

57.    Second, the bill deceptively presented the Network Enhancement Fee as something separate from the Optimum internet service, even though the Fee is in fact an

invented and arbitrary double-charge for the same internet service quoted in the internet service plan price.

58.     Despite this, as set forth above, Defendants' advertised and promised monthly internet costs for Optimum internet service neither included nor mentioned the Network Enhancement Fee.

59.     Moreover, Defendants never defined or explained the Network Enhancement Fee anywhere on their billing statements.  Even worse, the only explanation about "fees" on the customer bill that Defendants provide to Optimum customers indicated that all fees on the bill are government related.  In the fine print of the bill, under "Billing Information," Defendant stated: "Your monthly bill includes all government fees."  Moreover, for internet-only subscribers, such as Plaintiff Xue Shi Lin, the only "fee" that was typically on their bill was the Network Enhancement Fee.

60.     Thus, even if a customer noticed the existence of the hidden Network Enhancement Fee on his or her bill, the customer would reasonably assume—just as Defendants intended—that the Fee was a legitimate government tax or fee outside of Defendants' control.

61.     However, the Network Enhancement Fee was not a tax or government fee. The Network Enhancement Fee was not even a third-party pass-through charge.  Rather, Defendants invented the so-called "Network Enhancement Fee" out of whole cloth, and the existence of the Fee and its amount were arbitrary and entirely within Defendants' control.  Defendants concocted the Fee as a way to deceptively charge more for Optimum internet service without advertising a higher rate and to covertly increase customers' monthly rates for their own profit, including during their promised fixed-rate promotional period.

62.     Many, if not most, customers did not read the printed monthly statements described above at all because Defendants encourage Optimum customers to sign up for electronic billing and automatic payment in lieu of receiving paper statements.  In fact, Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman each signed up for and participated in the Optimum electronic billing and "Auto Pay" program.

63.     If a customer happened to notice that the Network Enhancement Fee was charged on the customer's monthly statement and contacted Defendants via phone or online to inquire about the Fee, Optimum agents would falsely tell the customer that the Fee was a tax or a pass-through government charge over which Defendants have no control.

**D.     Defendants Intentionally Make It Difficult for Optimum Internet Customers to Cancel Service.**

64.     If Optimum customers happened to realize that their actual total monthly bill was higher than what they were promised – and what they agreed to – after they received and reviewed their monthly billing statements, they could not simply cancel their Optimum internet service without penalty or cost, even if they noticed the Network Enhancement Fee overcharge on their very first statement.

65.     First, Optimum's "Risk-Free Experience," which is Defendants' term for their promised 60-day money-back guarantee, covers only the monthly service fee (*i.e.*, the base price of the Optimum internet service plan).  Customers who cancel during this 60-day period would not receive refunds of the Network Enhancement Fees or any installation charges they paid.

66.     Second, Optimum's Residential General Terms and Conditions of Service has an "Early Termination Fees" provision, which states at Section 5: "If you cancel, terminate or downgrade the Service(s) before the completion of any required promotional term to which You agreed ('Initial Term'), you agree to pay Altice any applicable early cancellation fee plus

all outstanding charges for all Services used and Equipment purchased for which you have not paid us prior to termination."[4]  This informs customers that if they terminate service prior to the end of their promotional fixed-price period, they may be subject to a "cancellation fee."

67.     Third, Defendants do not pro-rate cancellations of Optimum internet service. Thus, customers are charged for the cost of the *entire* month even if they cancel on the very first day of the service month.[5]

68.     Fourth, customers may also rent or purchase equipment to use exclusively with Defendants' Optimum internet and cable services, such as internet and telephone modems, wireless routers, and digital cable converter boxes.

69.     Defendants' refusal to provide a full refund despite the purported 60-day money-back guarantee, cancellation fee, and refusal to pro-rate cancellations are designed by Defendants to penalize and deter customers from cancelling their Optimum internet service after signing up.  These policies are deliberately and knowingly designed by Defendants to lock customers in if and when they deduce that they are being charged more per month than advertised and agreed-to for Optimum's internet services.

70.     Because the initial amount of the Network Enhancement Fee – $2.50 per month beginning in February 2019 – and the subsequent increase by $1.00 approximately a year later to $3.50 per month were relatively small in proportion to Defendants' total monthly charges for their Optimum services, Defendants knew that Optimum customers were unlikely to notice the new or increased charge on their monthly bills.  Given that legitimate taxes and other

---

[4] *See* https://www.optimum.com/terms-of-service/residential (last accessed July 22, 2022).

[5] *See id.*, stating: "PAYMENTS ARE NONREFUNDABLE AND THERE ARE NO REFUNDS OR CREDITS FOR PARTIALLY USED SUBSCRIPTION PERIOD(S). … Any request for cancellation after the commencement of a service period will be effective at the end of the then-current service period."

government-related charges can already vary from month to month, Defendants also knew that Optimum customers reasonably expected small changes in the total amount billed each month. Defendants further knew that Optimum customers would not readily be able to tell that Defendants increased the price for their Optimum internet service via the Network Enhancement Fee by merely comparing the total amount billed in a particular month to the total amount billed in the prior month or months.

71.    When Defendants increased the Network Enhancement Fee in February 2020, Defendants hid the increase by providing no disclosure or explanation whatsoever anywhere on the first billing statement containing the increase, other than listing the increased Fee itself (buried in the middle of a multi-page bill).  Even a customer who read the entire bill would have zero notice that Defendants had increased the Fee, or whether or why the customer's new monthly bill was higher than the prior month's total.

## PLAINTIFFS' FACTUAL ALLEGATIONS

72.    All Plaintiffs are, and at all relevant times have been, citizens and residents of New York and Connecticut.

73.    All Plaintiffs are current customers of Optimum internet service, or were during the relevant class period.

74.    When Plaintiffs purchased their Optimum internet service plans, Defendants prominently advertised and quoted to them that their plans would cost a particular monthly price, a price to which Plaintiffs agreed.  Defendants did not disclose to Plaintiffs, at any time before or when they signed up, that Defendants would charge them a Network Enhancement Fee in addition to the advertised and promised monthly price.

75.    Despite this, Defendants have charged each Plaintiff a Network Enhancement Fee of up to $3.50 per month on each monthly bill.

76.     Defendants never adequately disclosed the Network Enhancement Fee to Plaintiffs in any form or fashion, and Plaintiffs never agreed to pay the Network Enhancement Fee to Defendants.  In fact, Plaintiffs were not aware of the existence of the Network Enhancement Fee until well after they signed up for Optimum internet service.

77.     Specifically, Defendants never provided Plaintiffs with notice or adequate notice that they would be (or were being) charged the Network Enhancement Fee to provide the same internet service they had already been promised at the quoted rate – not at sign-up, not on Plaintiffs' monthly bill, not on Defendant's Optimum website, or otherwise.  Further, Defendants did not provide Plaintiffs with any information regarding the true nature or basis of the Network Enhancement Fee, and never provided Plaintiffs with any opportunity to agree or object to the Fee.  In fact, no Plaintiff ever agreed to pay the Network Enhancement Fee to Defendants.

78.     Further, Defendants misrepresented the true nature of the Network Enhancement Fee on the Optimum website, as described herein.

79.     Moreover, despite increasing the amount of the Network Enhancement Fee in or around February 2020, Defendants never disclosed to Plaintiffs at any time that the Network Enhancement Fee would or might increase, never provided Plaintiffs with notice or adequate notice of such increase, and never provided Plaintiffs with any opportunity to agree or object to the increase.  In fact, no Plaintiff ever agreed to an increase of the Network Enhancement Fee.

80.     Because the Network Enhancement Fee was not included in the quoted price for Plaintiffs' Optimum internet service plans, Defendants have for years been charging Plaintiffs more each month than what Plaintiffs agreed and contracted to pay.  Defendants concealed and failed to disclose the true price of their Optimum internet plans to Plaintiffs.

81.     Plaintiffs did not expect (and were never told) that Defendants would charge them the so-called Network Enhancement Fee on top of the advertised, promised, and agreed-to Optimum internet service plan price, or that the actual price of the internet service they had agreed to purchase was greater than what they had agreed to pay, in that it included an undisclosed, extra-contractual Network Enhancement Fee that Defendants could and would unilaterally increase at their desire.  This information was material to Plaintiffs.  Had Plaintiffs known this information, they would not have been willing to pay as much for their Optimum internet service plans and would have acted differently.

82.     Further, Plaintiffs did not know, nor could they have known, that the Network Enhancement Fee was invented by Defendants as part of a scheme to covertly charge a higher price for Optimum internet service than advertised and as a way to raise the monthly rate at any time, even during Plaintiffs' fixed-price promotional periods.

83.     Plaintiffs have a legal right to rely now, and in the future, on the truthfulness and accuracy of Defendants' representations and advertisements regarding their Optimum internet service plan prices.  Plaintiffs believe they were given the services that Defendants promised them, just not at the prices that Defendants promised and advertised to them, which Plaintiffs agreed to pay.

84.     Each Plaintiff remains an Optimum internet customer as of this filing.  Plaintiffs cannot cancel their Optimum internet service plans without significant cost.  Plaintiffs will continue to purchase Optimum internet service from Defendants in the future.  However, Plaintiffs want to be confident that the advertised and quoted prices for Optimum internet service plans are the true and full prices for those services (*i.e.*, that the prices include all applicable discretionary monthly service fees such as the Network Enhancement Fee), and that all discretionary fees like the Network Enhancement Fee are properly and adequately disclosed.

And, if Defendants introduce any new or invented discretionary monthly service fee – like they did with the Network Enhancement Fee – Plaintiffs want to be confident that Defendants will include the amount of that service fee in the advertised and quoted service plan price, and that such fee is included in the plan price before Plaintiffs and other Optimum internet service customers sign up for Defendants' Optimum internet service.  Plaintiffs will be harmed if, in the future, they are left to guess as to whether Defendants' representations and advertisements as to their service prices are accurate and whether there are omissions and misrepresentations of material facts regarding the price of the internet service plans advertised and represented to them.

85.     As of the date of filing, each Plaintiff has suffered actual damages in the amount of the undisclosed, extra-contractual Network Enhancement Fees they paid to Defendants.

## CLASS ALLEGATIONS

86.     Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

87.     Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman seek damages, statutory penalties, punitive damages, and injunctive relief on behalf of themselves and all members of the following proposed Class:

> **All current and former Optimum customers who were charged a "Network Enhancement Fee" for internet service received in New York or Connecticut within the applicable statute of limitations.**

88.     Specifically excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

89.     ***Numerosity***. The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery.  However, based on information and belief, there are approximately 2 million Class members. The exact number and identities of Class members are contained in Defendants' records and can be easily ascertained from those records.

90.     ***Commonality and Predominance***. All claims in this action arise exclusively from the uniform policies and procedures of Defendants as outlined herein.  This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These questions predominate over any questions that might affect individual Class members. These common questions include, but are not limited to:

a.     Whether New York law applies to the claims of Plaintiffs and the Class;

b.     Whether Defendants employed a uniform policy of charging the Network Enhancement Fee to their Optimum internet customers;

c.     Whether the Network Enhancement Fee was a bogus or made-up fee;

d.     Whether the amount of the Network Enhancement Fee was arbitrary;

e.     Whether the Network Enhancement fee was a disguised double-charge for internet service;

f.     What was the nature and purpose of the Network Enhancement Fee;

g.     What costs did the Network Enhancement Fee pay for and how were the revenues from the Network Enhancement Fee spent;

h.     Why did Defendants decide to start charging the Network Enhancement Fee;

i.      Why did Defendants not include the amount of the Network Enhancement Fee in the advertised and quoted Optimum internet service plan prices;

j.      Whether Defendants' policy and practice of advertising and quoting the prices of their Optimum internet service plans without including the existence or amount of the Network Enhancement Fee was false, deceptive, or misleading;

k.      Whether Defendants' policy and practice of advertising and representing that the prices of their Optimum internet service plans were fixed and would not increase during a specified promotional period, when in fact Defendants reserved the right to and did in fact increase service prices during that period by increasing the Network Enhancement Fee, was false, deceptive, or misleading;

l.      Whether Defendants' uniform policy and practice of burying the Network Enhancement Fee in the middle of a multi-page bill was deceptive and misleading;

m.      Whether Defendants' failure to define or explain the Network Enhancement Fee in their Optimum monthly billing statements was deceptive and misleading;

n.      Whether Defendants deliberately hid and obscured the nature of the Network Enhancement Fee in their Optimum billing statements;

o.      Whether Defendants adequately or accurately disclosed the existence of the Network Enhancement Fee, its nature, or its amount, to the Class in any form or fashion, and if so, when;

p.      Whether Defendants' deceptive conduct, misleading advertisements, and other misrepresentations and material omissions described herein violate New York General Business Law §§ 349 and 350; and

q.      Whether Defendants' conduct described herein constituted a breach of contract in violation of the implied covenant of good faith and fair dealing.

91.    *Typicality*. Plaintiffs, like all class members, are current or former customers of Defendants' Optimum internet service who have been charged higher monthly rates than quoted at the time of subscription and/or whose rates have been surreptitiously increased by Defendants' unilateral imposition and systematic raising of the Network Enhancement Fee. Plaintiffs' claims are typical of Class members' claims, in that all claims arise from the same course of conduct by Defendants, are based on the same legal theories, and face the same potential defenses.  Plaintiffs are each a member of the Class they seek to represent. All claims of Plaintiffs and the Class arise from the same course of conduct, policy and procedures as outlined herein.

92.    *Adequacy*. Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class. Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class actions and consumer protection cases.

93.    *Superiority*. Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendants' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by Defendants. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

94.     By their conduct and omissions alleged herein, Defendants have acted and refused to act on grounds that apply generally to the Class.

95.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

96.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the harm suffered by each Class member is too small to make individual actions economically feasible.

97.     Common questions will predominate, and there will be no unusual manageability issues.

98.     Without the proposed class action, Defendants will likely retain the benefits of their wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiffs and Class members.

**CAUSES OF ACTION**

**COUNT I**

**Violations of New York General Business Law § 349**

99.     Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

100.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

101.    In their advertising, sales, and billing practices with respect to Optimum internet service in the State of New York and throughout the United States, Defendants conducted business and trade within the meaning of New York General Business Law § 349.

102.    Plaintiffs and Class members are each consumers who purchased Optimum internet service from Defendants for their personal use.

103.    Defendants have engaged in deceptive and misleading practices with respect to Plaintiffs and the Class, which include, without limitation:

a.    Misrepresenting the prices of Defendants' internet service plans by advertising or quoting an internet service plan price that did not include applicable monthly service charges such as the Network Enhancement Fee;

b.    Inventing a bogus "Network Enhancement Fee" out of whole cloth and not including that Fee amount in the advertised and quoted price of the internet service plan, when in fact the Fee is an arbitrary and disguised double-charge for the internet service promised in the plan;

c.    Misrepresenting that the prices of their internet service plans are fixed and will not increase during a specified promotional period, when Defendants reserve the right to (and did in fact) increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee;

d.    Misrepresenting the nature of the Network Enhancement Fee, including by stating or indicating that the Network Enhancement Fee is a tax, government fee, regulatory fee, or charge over which Defendants have no control; and

e.    Charging the undisclosed, extra-contractual Network Enhancement Fee to Plaintiffs and the Class despite the fact that Plaintiffs and the Class neither agreed nor consented to pay such fee.

104.    Moreover, Defendants omitted, actively concealed, and failed to adequately disclose the true nature and amount of the Network Enhancement Fee, and the increase thereto. With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Defendants

concealed material information from Plaintiffs and Class members; and (c) Defendants made partial representations, including regarding the supposed monthly rate of Optimum internet service plans, which were false and misleading absent the omitted information.

105.    Defendants' misrepresentations and omissions have a tendency to deceive, and in fact deceived, the general public, including Plaintiffs and the Class.

106.    Defendants' misrepresentations and omissions were and are material, in that they were likely to, and did in fact, mislead reasonable consumers acting reasonably under the circumstances.

107.    Although not required by New York law, Plaintiffs and Class members reasonably relied on Defendants' material misrepresentations, and would not have purchased, or would have paid less money for, Defendants' Optimum internet service plans had they known the truth about Defendants' Network Enhancement Fee.

108.    Defendants knowingly and willingly committed these deceptive acts and practices for their own profit.

109.    As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have been harmed and lost money or property in the amount of the Network Enhancement Fees they were charged by and paid to Defendants.

110.    By reason of this conduct, Defendants have engaged in deceptive conduct in violation of the New York General Business Law.

111.    Defendants' actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and Class have sustained, as Defendants charged the undisclosed, extra-contractual Network Enhancement Fees to Plaintiffs and the Class and required Plaintiffs and the Class to pay such Fees to Defendants.

112.     As a result of Defendants' violations, Plaintiffs and the members of the Class have suffered damages and are entitled to recover those damages or $50, whichever is greater. Plaintiffs and the members of the Class are also entitled to treble damages up to $1,000 because Defendants willfully and knowingly violated New York General Business Law § 349. Plaintiffs and the members of the Class are also entitled to an injunction to halt the unlawful practices and to reasonable attorney's fees from Defendants.

## COUNT II

### Violations of New York General Business Law § 350

113.     Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

114.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

115.     Pursuant to the statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

116.     Defendants' material misrepresentations, omissions, and failures to disclose as described herein also constituted false advertising in violation N.Y. Gen. Bus. Law § 350, which broadly declares unlawful all "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

117.     Defendants have engaged in misleading advertising regarding Optimum internet service with respect to Plaintiffs and the Class, which include, without limitation:

     a.     Misrepresenting the prices of Defendants' internet service plans by advertising or quoting an internet service plan price that did not include applicable monthly service charges such as the Network Enhancement Fee;

b.      Inventing a bogus "Network Enhancement Fee" out of whole cloth and not including that Fee amount in the advertised and quoted price of the internet service plan, when in fact the Fee is an arbitrary and disguised double-charge for the internet service promised in the plan;

c.      Misrepresenting that the prices of their internet service plans are fixed and will not increase during a specified promotional period, when Defendants reserve the right to (and did in fact) increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee; and

d.      Misrepresenting the nature of the Network Enhancement Fee, including by stating or indicating that the Network Enhancement Fee is a tax, government fee, regulatory fee, or charge over which Defendants have no control.

118.    Moreover, Defendants omitted, actively concealed, and failed to disclose the true nature and amount of the Network Enhancement Fee in their advertisements.  With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Defendants concealed material information from Plaintiffs and Class members; and (c) Defendants made partial representations, including regarding the supposed monthly rate of Optimum internet service plans, which were false and misleading absent the omitted information.

119.    Defendants' misleading advertisements have a tendency to deceive, and in fact deceived, the general public, including Plaintiffs and the Class.

120.    Defendants' misleading advertisements were and are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

121.    Plaintiffs and Class members reasonably relied on Defendants' misleading advertisements, and would not have purchased, or would have paid less money for, Optimum internet service had they known the truth.

122.    Defendants knowingly and willingly made these false advertisements and misrepresentations, for their own profit.

123.    As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have been harmed and lost money or property in the amount of the Network Enhancement Fees they were charged by and paid to Defendants.

124.    By reason of this conduct, Defendants have engaged in deceptive advertising in violation of the New York General Business Law.

125.    Defendants' actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and Class have sustained, as Defendants charged the undisclosed, extra-contractual Network Enhancement Fees to Plaintiffs and the Class and required Plaintiffs and the Class to pay such Fees to Defendants.

126.    As a result of Defendants' violations, Plaintiffs and each member of Class have suffered damages and are therefore entitled to recover damages or $500 per person (whichever is greater). Plaintiffs and each member of the Class are also entitled to treble damages up to $10,000 because Defendants willfully and knowingly violated New York General Business Law § 350.  Plaintiffs and the members of the Class are also entitled to an injunction to halt the unlawful practices, and to reasonable attorney's fees from Defendants.

## COUNT III

### Breach of Contract Through Violation of
### the Implied Covenant of Good Faith and Fair Dealing

127.    Plaintiffs reallege and incorporates by reference all paragraphs previously alleged herein.

128.    By operation of law, there existed a contract for the sale of Optimum internet service between Defendants and each Plaintiff and Class member.

129.    By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

130.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each Plaintiff and class member.

131.    Defendants have abused any discretion they purportedly had under any applicable contract to impose or increase the Network Enhancement Fee. For example:

a.    Defendants misrepresented the prices of Defendants' internet service plans by advertising, quoting, and promising an internet service plan price that did not include applicable monthly service charges such as the Network Enhancement Fee;

b.    Defendants invented the bogus "Network Enhancement Fee" out of whole cloth and did not include that Fee amount in the advertised, quoted, and promised price of the internet service plan, when in fact the Fee is an arbitrary and disguised double-charge for the internet service promised in the plan;

c.    Defendants misrepresented that the prices of their internet service plans were fixed and would not increase during a specified promotional period, when Defendants reserved the right to, and did in fact, increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee;

d.      Defendants misrepresented the nature of the Network Enhancement Fee in their advertising, on the customer bill, and in customer interactions, including by stating or indicating that the Network Enhancement Fee is a tax, government fee, regulatory fee, or charge over which Defendants have no control; and

e.      Defendants charged the undisclosed, extra-contractual Network Enhancement Fee to Plaintiffs and the Class despite the fact that Plaintiffs and the Class neither agreed nor consented to pay such fee.

132.    Moreover, Defendants omitted, actively concealed, and failed to adequately disclose the true nature and amount of the Network Enhancement Fee, and the increase thereto. With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, inter alia: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Defendants concealed material information from Plaintiffs and Class members; and (c) Defendants made partial representations, including regarding the supposed monthly rate of Optimum internet service plans, which were false and misleading absent the omitted information.

133.    Defendants' imposition and increase of the Network Enhancement Fee defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. Defendants' conduct and actions alleged herein were done in bad faith.

134.    Defendants' conduct described herein has had the effect, and the purpose, of denying Plaintiffs and the Class members the full benefit of their bargains with Defendants.

135.    Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with Defendants. There is no legitimate excuse or defense for Defendants' conduct.

136.    Any attempts by Defendants to defend their overcharging through reliance on supposed contractual provisions will be without merit. Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and are unenforceable in light of the deceptive and hidden nature of Defendants' misconduct, among other reasons. Any such provisions, if any, would not excuse Defendants' abuses of discretion or otherwise preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and fair dealing.

137.    Plaintiffs and members of the Class sustained damages as a result of Defendants' breaches of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman ask this Court to:

A.    Certify the case as a class action and appoint Plaintiffs and their counsel to represent the Class;

B.    Declare that Defendants' conduct alleged herein violates the laws cited above;

C.    Permanently enjoin Defendants from engaging in the misconduct alleged herein;

D.    Enter judgment in favor of Plaintiffs and each Class member for damages suffered as a result of the conduct alleged herein;

E.    Order Defendants to pay punitive, exemplary, treble, and/or statutory damages to Plaintiffs and the Class under the laws outlined herein;

F.    Order Defendants to pay attorneys' fees and costs to the extent allowed by law;

G.    Order Defendants to pay pre-judgment and post-judgment interest to the extent allowed by law; and

H.      Grant such other and further legal and equitable relief as the Court deems just

and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  July 22, 2022          BY:  _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
315 Madison Ave., 3rd Fl.
New York, NY 10017
Telephone: (646) 979-3642
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*
Paul Karl Lukacs, Esq.*
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiffs and the Proposed Class*